STATE OF NEBRASKA, APPELLEE, V. ENOCH ROBINSON, APPELLANT.

173 N. W. 2d 443

Filed January 9, 1970. No. 37348.

Mark J. Ryan, for appellant.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

NEWTON, J.

The defendant Enoch Robinson appeals from his conviction of murder in the first degree in the district court for Thurston County, Nebraska. In accordance with the finding of the jury, he was sentenced to imprisonment for life. We affirm the judgment and sentence of the trial court.

The defendant, the deceased, and several of the witnesses are Omaha Indians. All of the Indians involved were residents of or staying temporarily in the vicinity of Macy, Thurston County, Nebraska. They were drinking, primarily beer, throughout the afternoon and evening of Sunday, January 12, 1969. The deceased Norman Grant was a physically strong man, about 5 feet 9 inches in height, weighing in excess of 200 pounds, and 32 years of age, but his left arm had been amputated above the elbow. His party ran out of beer and several of them drove to Homer, Nebraska, to replenish their supply. As Norman Grant entered a Homer tavern about 4 or 4:30 p.m., he was accosted by the defendant who had a knife in his sleeve and placed it against Norman's neck informing Norman that: "* * * he had a knife to his neck." Norman knocked the defendant's arm up and then knocked him down. Defendant was ejected. A short time later Norman Grant's brother Donald was assaulted by defendant outside the tavern. In the struggle, defendant dropped the knife which was picked up by another member of the party and left with the bartender.

Later that night, at approximately 1 a.m. on January 13, 1969, Norman Grant and another brother Mathew

Grant left the home of friends in Macy and walked toward their own home in that village. They were overtaken by the defendant and a sister of the defendant. Defendant asked them: "* * * if we wanted to settle it now." He had an object in his hand and swung at Mathew Grant who backed away. He then went after Norman who kept backing away for a considerable distance but was steadily pursued by defendant. In the meantime, defendant's sister struck Mathew with a club of some nature, inflicting a cut on his scalp. Mathew ran away but returned when defendant and his sister left the scene. He found Norman injured and bleeding; and helped him walk to the house of an acquaintance who was aroused and conveyed them to the hospital at Winnebago, Nebraska. There a nurse examined Norman, found he was dead, and called a doctor who verified that fact. The doctor also sutured Mathew's scalp wound.

The county sheriff was called. After viewing the body and talking with the doctor and Mathew Grant, he met an investigating officer of the Nebraska State Patrol at the hospital and they proceeded to Macy. On arriving at Macy about 4 a.m., they checked the scene of the crime and found numerous blood stains in the snow and a bloodstained knife blade broken in three parts.

On the afternoon of January 13, 1969, defendant went to the home of a teacher in a local churchschool and asked to use the phone saying: "My name is Enoch Robinson and I want to turn myself in, I want to call the police." The teacher then called for the sheriff. Defendant remained there until the arrival of the sheriff. While waiting, defendant was asked by the teacher what had happened. Defendant said: "* * * he had been in a fight, he guessed he had used a knife * * *."

Defendant testified in his own behalf. He indicated he was drunk and his memory very hazy about events occurring on January 12 and 13, 1969, but denied having injured Norman Grant.

An autopsy was performed on the body of Norman Grant. The examining physician found lacerations on the right ear and cheekbone, the chin, and below the left eye. He also found stab wounds below the sternal notch, below the breastbone, and on the left side of the neck above the clavicle. The neck wound which was 3 inches in depth appears in photographs to have been at least 1 inch in length. He indicated the wounds were made with a pointed, narrow instrument such as a screwdriver or sharp paring knife. He also found that the left carotid artery and the left jugular vein had been severed as a result of the wound in the neck. Death was caused by bleeding from the neck wound.

Two colored photographs of the blood covered face, head, and torso of deceased and one full length photograph were received without objection. One full length colored picture taken after the body had been washed was also admitted without objection. Defendant objected strenuously to the admission of a colored photograph taken during the course of the autopsy. Part of the flesh over the left chest, shoulder, and neck had been folded back and a forceps inserted through the wound in the neck to show its size and location. The picture was admitted as exhibit 13.

Defendant assigns the admission of exhibit 13 as prejudicial error. The question of the admissibility of photographs in evidence rests largely in the discretion of the trial court. See 23 C. J. S., Criminal Law, § 852 (1), p. 345. A photograph proved to be a true representation of the person, place, or thing which it purports to represent is ordinarily proper evidence of anything of which it is competent and relevant for a witness to give a verbal description. Davis v. State, 171 Neb. 333, 106 N. W. 2d 490. For many years the courts of this country have held that evidence of a gruesome nature and which may tend to inflame the passions of jurors should be excluded unless it has some probative value which outweighs its possible prejudicial effect. See State v. Morris,

245 La. 175, 157 So. 2d 728. Such evidence is generally admitted for purposes of identification to show the condition of a body and to indicate the nature and extent of wounds or injuries. See Reizenstein v. State, 165 Neb. 865, 87 N. W. 2d 560. It is also admitted to establish malice and intent. See State v. Blackwell, 184 Neb. 121, 165 N. W. 2d 730.

In the present instance, the photograph was offered to show the size and location of the neck wound which was in the nature of a slit, about 1 inch in length. In view of the doctor's testimony that the wounds were made by "a pointed narrow instrument such as maybe a screwdriver, maybe a sharp paring knife," this evidence appears to be pertinent and particularly so when the broken and bloodstained knife found at the scene of the crime has a blade at least 1 inch wide and about 7 inches long. It is definitely not a screwdriver or what is commonly referred to as a paring knife, but it obviously is the weapon used and of a type which could inflict a wound such as the one that resulted in death. The picture served to indicate the nature and extent of the wound.

In People v. Harrison, 59 Cal. 2d 622, 30 Cal. Rptr. 841, 381 P. 2d 665, the court stated: "The test is whether the evidence is relevant, and in determining the relevancy the trial court is to weigh and balance the probative value of the pictures as against their possible prejudicial effect." In another case, People v. Brommel, 56 Cal. 2d 629, 15 Cal. Rptr. 909, 364 P. 2d 845, involving photographs taken during an autopsy, the photographs were found to be relevant and admissible. Photographs of this nature were also found acceptable in People v. Arguello, 65 Cal. 2d 768, 56 Cal. Rptr. 274, 423 P. 2d 202. See, also, State v. Hanna, 150 Conn. 457, 191 A. 2d 124; State v. Bucanis, 26 N. J. 45, 138 A. 2d 739, 73 A. L. R. 2d 760.

The State has the burden of going forward with the evidence. It cannot anticipate the nature of the defense

which will be subsequently advanced by the defendant and which it will be required to meet. It must prove all elements of the crime charged beyond a reasonable doubt and also combat all possible defenses. Under such circumstances, evidence is frequently advanced which appears unnecessary after the trial has been concluded. Nevertheless, if such evidence were to be omitted, it could well leave an opening for a successful defense on the part of a defendant. This is true in most criminal prosecutions and this case was not an exception.

There is reason to doubt the inflammatory effect of such a picture. It is understandable that a picture of a body horribly mutilated or dismembered might well influence a jury against a person accused of such mutilation. Yet, such pictures are often properly received in evidence. In the present age when crime is rampant, when we are at war, and when the news media often describes and supplies pictorial evidence of the violent results, those members of the public who serve as jurors are not likely to be greatly influenced by such evidence. In the present instance, it was clearly understood by the jury that the violence done to the body during the autopsy was the work of the physician and not of the defendant.

The evidence adduced in this case clearly establishes murder in the first degree resulting from the persistently aggressive acts of defendant. The only extenuating circumstance was the possible drunken condition of defendant at the time. The jury, rather than recommending a death sentence, found defendant should be imprisoned for life. This was not the act of jurors whose passions and prejudices had been aroused. On the contrary, the jury treated the defendant as leniently as the law permits.

We do not find that there was an abuse of discretion requiring a reversal of the judgment in this case. Nevertheless, it is, under prevailing rules, a borderline case, and our trial courts should be ever vigilant and guarded

in dealing with such evidence. Except in cases of absolute necessity, prosecuting attorneys should avoid the use of doubtful evidence of this character.

Exception is taken to the admission in evidence of the knife with which defendant earlier in the day threatened Norman Grant. The knife and the incidents occurring at the time mentioned were pertinent. They demonstrated the malice and ill will of the defendant toward Norman Grant and the motive for the final assault. Defendant also excepts to the reception in evidence of the bloodstained clothes worn by the deceased. They perhaps had little evidentiary value, but it is difficult to see how defendant could have been prejudiced by their reception, especially so in view of the pictures of the body coated with blood which were introduced without objection. These contentions are without merit.

Defendant challenges the sufficiency of the evidence. The outline of the evidence given above belies the validity of this complaint.

Defendant asserts that the admission alleged to have been made by defendant to the schoolteacher when "turning himself in" was not admissible because defendant had not been warned of his constitutional rights. The teacher had no connection with law enforcement officers but was acting solely as a private citizen. Furthermore, defendant was not then in custody. Under the circumstances, such warning was not required. See, State v. O'Kelly, 181 Neb. 618, 150 N. W. 2d 117. See, also, Evans v. United States, 377 F. 2d 535 (5th Cir., 1967), wherein it is stated: "The Miranda safeguards are applicable only in instances of 'custodial interrogation' which the Court defines as: '* * * questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'"

Several other assignments of error are set out in defendant's brief. Although not argued, they have been

considered and are found to be without merit.

The judgment of the district court is affirmed.

AFFIRMED.