STATE OF NEBRASKA, APPELLEE, V. GARY LeROY WILBUR, APPELLANT.

182 N. W. 2d 906

Filed January 22, 1971. No. 37585.

Charles J. Knight, Ginsburg, Rosenberg, Ginsburg & Krivosha, R. P. Cathcart, Bernard Wishnow, and Ronald Rosenberg, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

BOSLAUGH, J.

The defendant, Gary LeRoy Wilbur, appeals from a conviction for manslaughter in the death of his wife, Judith Ann Wilbur. The assignments of error relate to the admission in evidence of his confession and certain photographs, and whether the defendant had a right to be represented by counsel at the autopsy of the deceased.

The record shows that Judith Ann Wilbur, the deceased, died on August 19, 1969, as the result of an injury to her liver from a sudden, violent compression or blow on the right side of her abdomen. The blow to the abdomen caused a laceration and shattering of the liver and a disruption of its capsule which could not be repaired surgically. Her death resulted eventually from loss of blood. The evidence is clearly sufficient to sustain a finding by the jury that the defendant struck the deceased with his fist during an argument at their home on August 15, 1969, and then came down on her abdomen with his knee causing the injury that resulted in her death.

The defendant was at the hospital when the deceased died at about 7 a.m., on August 19, 1969. He was arrested by Detective Barker at the hospital at approximately 7:45 a.m. The defendant was then allowed to return to the chapel at the hospital for about 30 minutes.

The defendant had a conversation with Barker and Inspector Sawdon at the hospital at about 8:15 a.m. The Miranda warnings were read to the defendant before the conversation took place and the defendant replied that he was willing to make a statement to the officers in the absence of counsel. The defendant admitted that he had struck his wife during the argument on August 15, 1969. The officers then advised the defendant that

he would have to go with them to police headquarters which he agreed to do.

A further conversation took place in Sawdon's office at police headquarters at about 9 a.m. in the presence of the county attorney. In this conversation the defendant related the events that led to the argument and assault in which he fatally injured his wife. At about 10 a.m., a statement was taken in the presence of a court reporter. The written statement was presented to the defendant at about 2:45 p.m. The defendant read over the statement, made several changes in it, and then signed it at about 3:30 p.m.

The defendant appeared in county court where a complaint had been filed at about 4 p.m. A date for a preliminary hearing was set and the defendant was released on bond.

The defendant contends that his waiver of counsel at the time the statement was taken by Sawdon and the county attorney was invalid because he had not been advised what charges might be brought against him. The defendant cites no authority which directly supports this contention.

During the conversation with the defendant at the hospital, after he had been advised of his rights, Barker and Sawdon told the defendant that they wanted to talk to him about the death of his wife. The defendant admits that this is true. There can be no doubt but that the defendant knew that he was being questioned by the police about his wife's death and, as a result of the police investigation, he might be charged with an offense arising out of her death.

The police could not advise the defendant as to what charge would be filed because the investigation was still in progress. To hold otherwise would be an unwarranted extension of the Miranda doctrine. The statement made by the defendant was not inadmissible because he was not advised as to what charge might be filed against him.

The defendant further contends that his statement was involuntary because it was obtained by use of inducements and promises at a time when he was under extreme emotional stress. The defendant testified that after he had been told that his wife had died, he "didn't care about anything but my children, what was going to happen to my wife." The defendant further testified that he asked about his children numerous times while the statement was being taken and that he was told that he had to give a statement before he would be allowed to see his children.

So far as emotional stress is concerned, Barker did testify that the defendant appeared despondent and cried once in his presence when they were at the hospital. This, of course, was just after the defendant's wife had died. Sawdon testified that the defendant appeared to be normal and not emotional when they arrived at police headquarters.

The defendant's claim that he was told he had to sign the statement was contradicted directly by Sawdon, and on cross-examination the defendant admitted that the county attorney told him he did not have to sign the statement. Sawdon further testified that the defendant did not inquire about his children while the statement was being taken, and this is corroborated by the testimony of the court reporter. The defendant's testimony, at most, was a matter for the consideration of the jury. The statement was properly received in evidence.

The photographs about which the defendant complains were taken during the autopsy. They show the body of the deceased and the liver after it had been removed from the body. The defendant contends that the photographs should not have been received in evidence because they were not relevant to any issue and served to inflame the jury.

Photographs, although of a gruesome nature, are admissible in evidence if they are relevant and a true

representation of what they purport to represent. State v. Robinson, 185 Neb. 64, 173 N. W. 2d 443.

The defendant in this case was charged with killing his wife while unlawfully striking her. The photographs of the body of the deceased were relevant because they showed the bruises inflicted by the defendant and demonstrated the violent nature of the assault. The extraneous marks on the body were explained in the testimony and could not have misled the jury.

The photographs of the liver were relevant because they supplemented and corroborated the testimony of the surgeon and the pathologist and helped to explain the mechanism of death. This was of importance in this case because of the time interval between the assault and the resulting death. The photographs were properly received in evidence.

The defendant contends that he was entitled to be represented by counsel at the autopsy performed on the body of the deceased. The defendant argues that this was a critical stage of the prosecution because the autopsy established the cause of death. The defendant cites no authority which directly supports his contention.

An autopsy is a medical procedure not unlike laboratory analysis of blood samples, hair, clothing, fingerprints, and similar matters. As stated in United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149: "Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts. The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial."

The judgment of the district court is affirmed.

AFFIRMED.