STATE OF NEBRASKA, APPELLEE, V. ROBERT RECORD, APPELLANT.

253 N. W. 2d 847

Filed May 25, 1977. No. 40965.

Thomas M. Kenney and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. THOMAS, J.

The defendant was tried and convicted in the District Court on a charge of first degree murder. The defendant was found guilty by a jury and sentenced to a term of life imprisonment. The defendant appeals.

The defendant asserts two assignments of error: (1) The District Court committed reversible error in admitting into evidence photographs of the deceased; and (2) the evidence was insufficient as a matter of law to prove the elements of first degree murder. We shall take the propositions in order.

The photographs, taken before the autopsy, show the victim's head. The victim's head had been partially shaved and the exhibits show the bullet wound over the left eye and stitches from a previous operation. The defendant does not seriously contest the relevancy of the exhibits, merely alleges that they are gruesome. The exhibits are unquestionably rel-

evant. They support a version of the incident given by an eyewitness. The exhibits clearly reflect that the bullet entered over the left eye, a direction consistent with the direction from which the fatal shot was fired. In State v. Wilbur, 186 Neb. 306, 182 N. W. 2d 906, this court said: "Photographs, although of a gruesome nature, are admissible in evidence if they are relevant and a true representation of what they purport to represent." See, also, State v. Stewart, 197 Neb. 497, 250 N. W. 2d 849. The pictures show the victim in the same state in which he was found immediately after the crime. Unless we were to state that in all cases a picture of a victim would be prejudicial and therefore inadmissible, which we are not prepared to do, the photographs are both relevant and clearly admissible and outweigh any possible prejudice to the rights of the defendant. The assignment is without merit.

Until 10:45 p.m. on the evening of October 11, 1975, the defendant was riding around in the city of Omaha in one Domalakes' car. Two girl companions were taken to their homes; and two other girls were met at a gas station and rode with Domalakes and the defendant around the Cathedral area in Omaha. They met another girl who entered the car. The second two girls left the car and the defendant, Domalakes, and the other girl, a Chris Christiansen, resumed their riding. During this time the defendant told Miss Christiansen that he intended to rob someone that night. Miss Christiansen so testified at trial. Miss Christiansen asked to be taken home and was. Domalakes, who was granted immunity, testified that after taking Miss Christiansen home, Domalakes drove to approximately 180th and Dodge Streets in Omaha and parked on a side road waiting for someone to drive by so the defendant could shoot and rob him. About approximately 3 a. m. a car driven by the victim passed their parked car proceeding east on Dodge Street. With Domalakes

driving, the car was pursued. Domalakes drove alongside it, as if to pass, heard a shot and the breaking of glass, and observed the defendant pointing the gun at the other car while hanging out the car window. Domalakes continued to watch the vehicle from his rear-view mirror as it swerved across the street into the oncoming lane of traffic, and then into a cornfield at approximately 140th and Dodge Streets. Domalakes and the defendant drove to 132nd and Dodge Streets, buried the gun underneath some grass, and proceeded back to where the victim's car had gone off the road. Oncoming traffic frightened the parties from the scene, frustrating their robbery plans. Later the gun was recovered by Domalakes. The gun, a .22 caliber rifle, and a box of ammunition, later identified as similar to that used in the shooting, were surrendered to the sheriff by Domalakes and received in evidence at the trial. Five witnesses testified that the defendant told them at various times after the incident that he had shot someone. These included conversations with acquaintances and with an inmate in the jail after defendant's arrest some months later. The bullet taken from the deceased's body and the alleged murder weapon were examined ballistically. The ballistics expert testified that the bullet taken from the deceased could have been fired by the gun in question, an exact determination being impossible due to the damaged condition of the fatal bullet caused by the entry into the victim's skull. A chemical test and microscopic examination of the lead from the bullets given by Domalakes to the sheriff and the slug taken from the deceased indicated that they could have come from the same batch of lead and manufacturer, and by inference, from the same box of cartridges given by Domalakes to the sheriff. The pathologist testified that the cause of death was a bullet wound to the head.

The defendant, by way of defense, offered testi-

mony that he spent the night with a girlfriend, confirming, however, that the events of the early evening testified to by Domalakes were correct. Sharon Kemp, the girlfriend, corroborated this alibi testimony. It is evident that more than sufficient evidence was introduced which, if believed, would prove the defendant guilty of the crime charged.

The jury saw the witnesses and evaluated their testimony and by their verdict chose to believe the witnesses and the evidence of the prosecution. Where as here, there is evidence to justify the verdict, the verdict will not be set aside unless clearly wrong. State v. Godinez, 190 Neb. 1, 205 N. W. 2d 644. The defendant's second assignment is without merit.

The judgment of conviction and sentence of the court are affirmed.

AFFIRMED.

WHITE, C. J., not participating.