STATE OF NEBRASKA, APPELLEE, v. ROOSEVELT PARTEE, APPELLANT.

258 N. W. 2d 634

Filed October 19, 1977. No. 41195.

Thomas M. Kenney and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Robert F. Bartle, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

In an information filed in the District Court for Douglas County on August 19, 1976, Roosevelt Partee, the defendant and appellant herein, was charged with murder in the second degree under section 28-402, R. R. S. 1943. Defendant pled not guilty and not guilty by reason of insanity. Trial commenced on November 15, 1976, and a jury found the defendant guilty as charged. Defendant's motion for new trial was overruled, and he was sentenced to a term of 25 years imprisonment in the Penal and Correctional Complex. Defendant has now appealed to this court, contending that the District Court committed reversible error in admitting into evidence photographs of the deceased; and in overruling motions for a directed verdict on the grounds that the evidence was insufficient as a matter of law and that the State failed to prove the essential elements of second degree murder. We affirm.

On August 5, 1976, Lela Partee, wife of the defendant, died in her home as the result of a brutal beating. At approximately 2:30 a.m. on that date, a rescue squad and police were called to the home, apparently by the defendant. Defendant told police

that he had been sleeping, and awoke to find his wife lying on the floor in a pool of blood. He stated that he then went to his daughter's home to call an ambulance. The victim was dead when the police arrived, and although rigor mortis had not occurred, the body was cool.

The evidence adduced at trial showed that the defendant had beaten his wife on more than one occasion in the months preceding her death. One such beating had occurred on July 30, 1976, 6 days before the crime herein, and as a result Mrs. Partee required emergency treatment in a hospital. Assault charges were filed against the defendant, who was temporarily placed in jail and released from custody on the day before his wife died.

Flora Phillips, a friend of the defendant, testified that she had seen the defendant on his front porch at approximately 10:15 p.m., on the night of the crime. She stated that the defendant was wearing a white shirt which was bloody, and she observed the defendant ripping the shirt off and throwing it on the porch. Police discovered a white shirt with blue pinstripes on the front porch after they arrived on the scene. The shirt was damp with bloodstains, and the buttons were ripped off. Blood was also found on the shirt, slacks, and shoes worn by the defendant when police arrived.

Photographs of the scene of the crime, introduced in evidence, indicated that a fight of some duration preceded the victim's death. Blood was found in three different rooms, and the mattress in the bedroom was soaked with blood. Several photographs of the deceased taken at the scene were introduced and received in evidence over defendant's objection. These photographs, many of which are gruesome, indicate that the victim was severely beaten about the head and upper body, and that numerous blows would have been required to inflict such a beating.

Richard B. Wilson, the doctor who performed an

autopsy on the deceased, testified that she suffered from lacerations of the scalp, with a large loss of scalp tissue; multiple abrasions and contusions of the face, shoulders, and arms; a fracture of the left arm; lacerations of the lip; and fractured ribs. He stated that the cause of death was a massive hemorrhage from scalp wounds. Photographs of the deceased taken at the morgue were received in evidence over defendant's objections, and Dr. Wilson referred to them in explaining the nature of the deceased's injuries and testifying that in his opinion a blunt instrument was used to inflict some of the wounds. The State introduced in evidence a broomstick which was found at the scene of the crime, which was broken, and which had bloodstains on it.

Witnesses for the defense testified that when the defendant was intoxicated he would pass out and not wake up for hours, even when one tried to arouse him. The evidence showed that the defendant was intoxicated on the night of the crime, as was the victim. Testimony was adduced to show that Flora Phillips, whose testimony has previously been referred to, had an altercation with the victim several days before her death, and had threatened the victim. Other evidence showed that an intruder could have entered the house, in which defendant and his wife lived, through a basement window which had been broken during the week before the crime.

Finally, there was evidence from psychiatrists that the defendant suffered from alcohol addiction, a seizure disorder, and schizophrenia. There was no evidence that the defendant was unable to distinguish between right and wrong either at the time of the crime or subsequent thereto.

Defendant first contends that the District Court erred in receiving in evidence the photographs of the deceased. A total of 18 photographs of the deceased were admitted in evidence over the objection of the defendant. Six of these were taken at the time of the

autopsy, and referred to by the doctor who performed the autopsy and testified in regard to the nature of the victim's injuries and the cause of death. The remaining 12 were taken at the scene of the crime from different angles and distances. Thirteen of the photographs are 'unquestionably gruesome, although five are not.

Defendant acknowledges the general rule that photographs, although of a gruesome nature, are admissible in evidence if they are relevant and a true representation of what they purport to represent. State v. Record, 198 Neb. 530, 253 N. W. 2d 847 (1977); State v. Wilbur, 186 Neb. 306, 182 N. W. 2d 906 (1971). "Although it is true that the probative value of such evidence should be weighed against its possible prejudicial effect before it is admitted, if a photograph illustrates or makes clear some controverted issue in a homicide case, a proper foundation having been laid, it may be received, even if it is gruesome." State v. Stewart, 197 Neb. 497, 250 N. W. 2d 849 (1977). See, also, State v. Robinson, 185 Neb. 64, 173 N. W. 2d 443 (1970); Washington v. State, 160 Neb. 385, 70 N. W. 2d 378 (1955). The admission of photographs of a gruesome nature rests largely in the sound discretion of the trial court. State v. Wilbur, *supra*; State v. Blackwell, 184 Neb. 121, 165 N. W. 2d 730 (1969).

In his brief, defendant appears to concede that some of the photographs were admissible to illustrate the nature and extent of the deceased's injuries, but argues that the number of pictures introduced in evidence was unnecessary. He contends that the cumulative effect of the gruesome photographs was highly prejudicial in this case, and that the trial court should have limited the number of photographs received in evidence.

It appears to be beyond dispute that at least some of the photographs were properly received in evidence. "In a homicide case, photographs of the vic-

tim, upon proper foundation, may be received in evidence for purposes of identification to show the condition of the body, the nature and extent of wounds or injuries, and to establish malice or intent." State v. Dittrich, 191 Neb. 475, 215 N. W. 2d 637 (1974). A photograph of the deceased may be admitted in evidence if it shows the mechanism of death. State v. Wilbur, *supra*. In this case, the photographs of the deceased taken at the scene were introduced to show condition of the body, the nature and extent of wounds or injuries, and to establish malice or intent. Malice and intent to kill are essential elements of the offense of second degree murder. State v. Walle, 182 Neb. 642, 156 N. W. 2d 810 (1968), cert. den. 393 U. S. 880, 89 S. Ct. 182, 21 L. Ed. 2d 153; State v. Hizel, 179 Neb. 661, 139 N. W. 2d 832 (1966). The photographs taken of the deceased at the morgue were introduced in conjunction with the testimony of the doctor who performed the autopsy, which dealt with the condition of the body and the mechanism of death. Therefore, under the rules cited above, the probative value of some photographs would appear to outweigh their prejudicial effect, particularly since the State had to establish malice and intent to kill by circumstantial evidence because there were no witnesses to the crime. See, State v. Blackwell, *supra;* State v. Walle, *supra.*

Defendant's contention that the number of photographs introduced in evidence was unnecessary and had a highly prejudicial cumulative effect presents a close question. It is certainly arguable that the State could have made out its case with the admission of fewer photographs. The admission of cumulative evidence of this nature, however, rests within the sound discretion of the trial court. State v. Blackwell, *supra.* In Blackwell, a total of nine photographs of the deceased were admitted in evidence, and this court found no abuse of discretion on the part of the trial court in admitting the photo-

graphs in evidence. In other jurisdictions, courts have upheld the admission in evidence of from 6 to 23 photographs of the deceased in homicide cases. See, Commonwealth v. Sullivan, 371 A. 2d 468 (Pa., 1977); Cowell v. State, 331 N. E. 2d 21 (Ind., 1975); Bauldree v. State, 284 So. 2d 196 (Fla., 1973); People v. Alsteens, 49 Mich. App. 467, 212 N. W. 2d 243 (1973). The number of photographs, in and of itself, is not dispositive, but rather all the circumstances of each case must be considered in determining whether the admission in evidence of a significant number of photographs was so prejudicial that it constitutes reversible error. An important consideration is whether a witness can effectively testify to the pertinent facts without the need of numerous photographs, or any photographs at all. This latter consideration is particularly relevant to photographs taken in conjunction with an autopsy, as a pathologist can often testify in regard to the autopsy without the need for photographs. See Commonwealth v. Scaramuzzino, 455 Pa. 378, 317 A. 2d 225 (1974).

In the present case, where it is clear that some of the photographs were properly admitted in evidence to prove intent, malice, and condition of the victim's body, and where the total number of photographs received was not prejudicial on its face, we cannot say that the trial court abused its discretion such that a new trial is required. A word of caution is, however, appropriate at this point. In State v. Robinson, *supra,* another borderline case involving the admission in evidence of gruesome photographs, this court noted that "our trial courts should be ever vigilant and guarded in dealing with such evidence. Except in cases of absolute necessity, prosecuting attorneys should avoid the use of doubtful evidence of this character." See, also, People v. Alsteens, *supra*. This caveat is particularly appropriate in cases where it is proper to admit some gruesome photographs in evidence; in such cases care should

be taken that no more photographs than are absolutely necessary are admitted. In cases, unlike the present case, where photographs are not necessary to enable the State to satisfy its burden of going forward with the evidence and establishing all the elements of the crime charged, gruesome photographs should be excluded entirely. State v. Robinson, *supra*.

Defendant's second assignment of error is that the trial court erred in overruling his motions for a directed verdict on the grounds that the evidence was insufficient as a matter of law and that the State failed to prove the essential elements of second degree murder. One is guilty of second degree murder when one purposely and maliciously, but without deliberation and premeditation, kills another person. § 28-402, R. R. S. 1943.

The evidence in this case was clearly sufficient to support a jury finding that the person who killed the victim acted purposely and maliciously, and with intent to kill. The victim was brutally and relentlessly beaten, and part of her scalp was torn away. The evidence negated any theory that the victim died accidently, or that the perpetrator meant only to injure her and not kill her. Under circumstances such as those presented in this case, the jury could properly infer that the perpetrator acted with malice and intent to kill. See, State v. Marion, 174 Neb. 698, 119 N. W. 2d 164 (1963); State v. Blackwell, *supra*.

The evidence is also sufficient to support the jury finding that the defendant was the perpetrator, although the evidence presented by the State was largely circumstantial. "The test of the sufficiency of circumstantial evidence in a criminal prosecution is whether the facts and circumstances tending to connect the accused with the crime charged are of such conclusive nature as to exclude to a moral certainty every rational hypothesis except that of guilt."

State v. Bartlett, 194 Neb. 502, 233 N. W. 2d 904 (1975). See, also, State v. Swayze, 197 Neb. 149, 247 N. W. 2d 440 (1976). In determining the sufficiency of evidence to sustain a conviction, however, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the jury. State v. Spidell, 194 Neb. 494, 233 N. W. 2d 900 (1975); State v. Brown, 195 Neb. 321, 237 N. W. 2d 861 (1976). The verdict of a jury must be sustained, if, taking the view most favorable to the State, there is sufficient evidence to support it. State v. Johnsen, 197 Neb. 216, 247 N. W. 2d 638 (1976).

The State presented evidence that the defendant had beaten the victim several times prior to her death. One such beating occurred only 6 days before the crime, and assault charges were filed against the defendant as a result of that beating. The defendant was seen wearing a bloody shirt 4 hours before discovery of the body. The shirt, slacks, and shoes worn by the defendant when police arrived were bloody. Defendant admitted being in the house at the time his wife died, but stated that he was asleep and awoke to find his wife lying on the floor. Although the defendant presented evidence that he could not be aroused from sleep after he had been drinking, that another person had threatened his wife during the week before her death, and that an intruder could have gained access to the apartment through a window, it is the province of the jury to weigh the evidence and credibility of witnesses, and to determine the plausibility of explanations. State v. Spidell, *supra*. There can be little doubt that the evidence presented by the State, and obviously believed by the jury, tended to connect the defendant with the crime charged and was conclusive of his guilt. Under such circumstances, it was not error for the trial court to overrule defendant's mo-

tion for a directed verdict, and the verdict of the jury must be sustained.

The contentions of the defendant are without merit, and therefore the judgment of the District Court is affirmed.

AFFIRMED.