STATE OF NEBRASKA, APPELLEE, V. THOMAS E. FREEMAN, APPELLANT.

267 N. W. 2d 544

Filed July 12, 1978. No. 41618.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, Bernard L. Packett, and Paul E. Hofmeister, for appellee.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and HASTINGS, District Judge.

BRODKEY, J.

Thomas E. Freeman, defendant and appellant herein, was charged with murder in the second degree in violation of section 28-402, R. R. S. 1943. A jury found the defendant guilty as charged, and the defendant was sentenced to life imprisonment in the Nebraska Penal and Correctional Complex. He has appealed from his conviction and sentence, contending that the trial court erred in (1) admitting into evidence an excessive number of photographs of the deceased; (2) failing to instruct the jury on the crime of manslaughter; and (3) imposing a sentence of life imprisonment rather than a sentence for a term of years. We affirm the judgment of the District Court.

On the morning of January 1, 1977, Rachael Pass was found dead in the bedroom of her apartment with multiple stab wounds on her body and throat. Two of her children, who were 6 and 7 years of age, testified they had awakened the previous night when they heard their mother screaming, and they had heard her cry out "Stop, Tommie," at one point. One of the children identified the defendant as being in the apartment at the time, and testified she saw the defendant pass her room to go to the kitchen and he returned carrying a knife.

A search of the defendant's apartment disclosed a shirt, jeans, shoes, and gloves containing bloodstains. The bloodstains matched the deceased's blood grouping and Rh factor. Also hairs similar to the deceased's were found in the gloves. When defendant was arrested one day after the crime, police found a fresh wound or cut on his hand.

The defendant, a boyfriend of the deceased, first told police officers that he had visited her in the early morning hours of January 1st for a short time, but had left. Subsequently he stated he had returned to her apartment, found her dead, panicked and left. Defendant stated the bloodstains on his

clothing must have gotten there when he was checking to see if the deceased was dead. Defendant denied killing the deceased, and presented evidence they had never quarreled or had fights. Defendant stated he had cut his hand on a candle holder in his apartment.

During the course of the trial, the District Court received in evidence six photographs of the deceased. Five of these photographs depicted the 14 stab wounds suffered by the victim, at least four of which could be considered gruesome. Defendant objected to the admission in evidence of the photographs on the grounds they had no probative value and would prejudice the jury. The trial court admitted them on the grounds they were relevant to the issues of intent and malice.

Defendant requested a jury instruction on the crime of manslaughter, contending that the jury could infer from the evidence that the deceased had been killed upon sudden quarrel. The trial court refused to give such an instruction, finding there was not sufficient evidence to justify the giving of a manslaughter instruction.

Defendant's first contention is the trial court erred in admitting in evidence six pictures of the deceased, and the court should have limited the number of photographs to the minimal number necessary to illustrate the nature and extent of the deceased's injuries. Defendant concedes that at least some of the photographs were admissible under our rule that the admission into evidence of gruesome photographs rests in the sound discretion of the trial court, which must determine their relevancy and weigh their probative value against their possible prejudicial effect. See, State v. Partee, 199 Neb. 305, 258 N. W. 2d 634 (1977); State v. Stewart, 197 Neb. 497, 250 N. W. 2d 849 (1977); State v. Robinson, 185 Neb. 64, 173 N. W. 2d 443 (1970). The photographs were relevant in this case to demonstrate

the murder had been done purposely and maliciously.

In State v. Partee, *supra*, the defendant similarly argued the number of photographs introduced in evidence was excessive and had a prejudicial cumulative effect. In that case we noted the number of photographs, in and of itself, is not dispositive, but that all the circumstances of each case must be considered in determining whether the admission in evidence of a significant number of photographs was so prejudicial that it constitutes reversible error. In Partee, and other cases cited therein, a greater number of photographs had been admitted in evidence than were admitted in the present case.

The circumstances of the present case do not disclose the trial court abused its discretion in receiving six photographs into evidence or that their probative value was outweighed by a prejudicial effect. Several photographs were necessary to depict the deceased's multiple wounds, and one of the pictures simply showed the position of her body when discovered. The admission of the photographs into evidence was clearly not reversible error. State v. Partee, *supra*.

Defendant next contends that the trial court erred by refusing to give a manslaughter instruction. Manslaughter is the unlawful killing of another person without malice, either upon a sudden quarrel, or unintentionally, while the slayer is in the commission of some unlawful act. § 28-403, R. R. S. 1943. It is the duty of the trial court, in homicide cases, to instruct only on those degrees of homicide which find support in the evidence. Where the evidence is such that different conclusions may properly be drawn therefrom, as to the degree of the crime, it is the duty of the trial court to instruct the jury on those degrees of homicide which find support in the evidence. See State v. Stewart, *supra*.

In the present case there was no evidence from

which a jury could infer that the murder was upon sudden quarrel or unintentional. The deceased was stabbed 14 times, and there was evidence the defendant had gone to the kitchen to procure a knife and returned to the deceased's bedroom. Contrary to defendant's contention, one cannot "easily surmise" from the evidence that the defendant acted in the heat of passion in a sudden quarrel. Therefore, the trial court did not err in refusing to give a manslaughter instruction. State v. Stewart, *supra*.

Defendant's final contention is the sentence was excessive and the trial court abused its discretion in imposing a sentence of life imprisonment rather than a sentence of imprisonment for a term of years. The well-established rule is this court on appeal will not disturb a sentence imposed within the limits prescribed by statute absent an abuse of discretion on the part of the trial court. State v. Hatridge, 199 Neb. 142, 256 N. W. 2d 327 (1977); State v. Trout, 199 Neb. 236, 257 N. W. 2d 703 (1977). The penalty for murder in the second degree is imprisonment for not less than 10 years or during life. § 28-402, R. R. S. 1943.

Defendant is 24 years of age, has a 10th grade education, and is the father of two illegitimate children. He has no serious criminal record, although he was convicted twice of petit larceny and has a juvenile record including larceny and assault and battery. The probation officer recommended incarceration for the maximum allowable period.

In view of the serious nature of the crime and the apparent deliberateness with which it was carried out, we cannot say that the trial court abused its discretion in this case. Although defendant received the maximum sentence permitted by law, under the circumstances of this case, such a sentence was warranted.

We affirm the judgment of the District Court.

AFFIRMED.