STATE OF NEBRASKA, APPELLEE, V. ERNEST WILMORE, APPELLANT.

224 N. W. 2d 756

Filed January 2, 1975. No. 39453.

Frank B. Morrison, Sr., and Bennett G. Hornstein, for appellant.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

The appellant herein was charged with the possession

of a controlled substance with the intent to distribute. Trial resulted in a jury verdict finding the appellant guilty as charged. During the trial, appellant's counsel had attempted to impeach a key witness for the prosecution by posing questions to him in reference to certain testimony given by that same witness at the preliminary hearing. Subsequently, the trial judge instructed the jury to disregard the defense counsel's reference to previous testimony on the ground that no transcript of that testimony had been introduced into evidence. The appellant asserts that the trial court erred in giving such an instruction. We agree and consequently reverse.

Ernest Wilmore, the appellant, was brought to trial before a jury on the charge of possession of a controlled substance with the intent to distribute: To wit, amphetamines. The key witness for the prosecution at the trial of Wilmore was one Robert Runkles, who had been serving with the Omaha police department as an undercover narcotics officer. On direct examination, Runkles testified that he first met Wilmore at the end of February or the beginning of March of 1973 at a bar located in Omaha. Runkles stated that no conversation concerning drugs occurred between him and Wilmore at that first meeting. Runkles indicated that he met with Wilmore at the same location on from two to four other occasions. According to Runkles' testimony, his first conversation with Wilmore relating to drugs occurred on March 10 or 12, 1973, at which time Runkles indicated to Wilmore that he was interested in purchasing amphetamines. Runkles said he could not recall who initiated that conversation relating to drugs. Runkles testified he did not purchase amphetamines from Wilmore at that time, but that he met Wilmore at the bar again on March 14, 1973, at approximately 2:30 p.m., on which occasion he purchased amphetamines from Wilmore.

On cross-examination, Runkles denied that all his conversations with Wilmore had concerned drugs. He

again asserted that he had not brought up the subject of drugs on the occasion of his first meeting with Wilmore. He also reasserted on cross-examination that he had only made one solicitation to purchase drugs from Wilmore prior to the actual purchase of the amphetamines on March 14, 1973.

It was at approximately this point in the cross-examination that defense counsel began to question Runkles with reference to his testimony at the preliminary hearing of the case. Defense counsel was careful to preface this portion of the cross-examination by establishing that Runkles had in fact testified at the preliminary hearing on July 25, 1973, at City Hall Annex, 11th and Dodge Streets, Omaha, Nebraska, before the Honorable A. Q. Wolf. Counsel for the defense asked Runkles whether he had admitted at the preliminary hearing that *all* his conversations with Wilmore had dealt with narcotics. Counsel also asked Runkles whether he had admitted that he had brought up the subject of narcotics at the first meeting. In response, Runkles indicated that he could not recall making such answers at the preliminary hearing. Runkles was asked whether he had admitted in his testimony at the preliminary hearing that Wilmore had produced the amphetamines pursuant to solicitations by Runkles at *several* prior meetings. Runkles answered, "Yes." Runkles was asked whether he had admitted that he had also asked Wilmore to please get him some amphetamines or that he had also asked Wilmore whether he knew where Runkles could get some amphetamines. Runkles answered, "Yes." Runkles was asked whether he had testified that he had initiated the drug-related conversation with Wilmore. Runkles answered, "Yes." It also appears in the record that during the cross-examination of Runkles, defense counsel asked permission of the trial court to exhibit the preliminary hearing bill of exceptions to the witness, but was refused.

No objections were interposed by the prosecution as to either the form or the substance of these particular questions. However, the District Judge, on his own motion, gave the following instruction: "You are instructed that you shall totally disregard any statements or reference made by counsel to testimony at a preliminary hearing since no transcript of such hearing has been introduced in evidence * * *." On appeal, Wilmore has assigned as error the action of the District Court in giving such instruction.

The State, in supporting the action of the trial judge in giving that instruction, relies exclusively upon the case of Cropsey v. Averill, 8 Neb. 151 (1879). The significant language in that case is found at page 157, where the following language appears: "Another of the assigned errors is, that on the cross-examination of the witness Hartley, counsel was permitted, against objection, to read from a deposition previously given by the witness, and then to ask him whether he had so testified, without first submitting the deposition to him for inspection. The correct rule of practice in such cases seems to be that where a *letter or a deposition signed by the witness* is used to contradict him, it must be regularly proved and read as part of the evidence by the cross-examining counsel. After it has been thus proved and read, the witness may be cross-examined as to any supposed discrepancies between his testimony in court and his deposition." (Emphasis supplied.) Our interpretation of this language of the court is that before a witness may be cross-examined relative to contradictory statements appearing in "a letter or a deposition signed by the witness," proper foundation must be laid for the admission of such letter or deposition into evidence. Such foundation would, we suppose, consist of calling the attention of the witness to the letter or deposition, identifying the time and place of its execution and to whom it was ad-

dressed, and the establishing of its genuineness. See, Thompson v. Wertz, 41 Neb. 31, 59 N. W. 518 (1894); Draper v. Taylor, 58 Neb. 787, 79 N. W. 709 (1899). Thereupon, under the rule announced in Cropsey v. Averill, *supra*, it would be incumbent upon the cross-examiner to actually read the letter or deposition in question into the record. Then, and only then, could the cross-examiner ask his questions of the witness relative to any discrepancies between the evidence thus read and the in-court testimony of the witness. Thus, in this appeal the State reasons that since defense counsel did not meticulously follow this procedure in his cross-examination of the witness Runkles, the trial court quite properly determined, on the authority of Cropsey v. Averill, *supra*, that all references made to the previous testimony of Runkles were inadmissible and that, therefore, the jury should be instructed to disregard such references. The appellant, on the other hand, would have us conclude that the actual submitting of the transcript of Runkles' previous testimony into evidence was not a precondition to the questioning of Runkles relative to the contents of that testimony.

It is true as a general proposition that, as concerns the use of prior inconsistent *oral* statements for the purpose of impeachment upon cross-examination, it is not necessary that extrinsic evidence of such statements be introduced into evidence before the witness may be interrogated relative to the contents of such statements. See, Wood River Bank v. Kelley, 29 Neb. 590, 46 N. W. 86 (1890); Peery v. State, 165 Neb. 752, 87 N. W. 2d 378 (1958). The rule enunciated in Cropsey v. Averill, *supra*, may be regarded as an exception to this general proposition. It is further true that Nebraska authorities clearly establish there is no general requirement that extrinsic evidence of *previous testimony* be introduced before a witness may be cross-examined regarding the content of such testimony.

In this respect, attention is first directed to the case of Hanscom v. Burmood, 35 Neb. 504, 53 N. W. 371 (1892). In that case, a plaintiff's witness, Eberhart Kurz, testified he had made an examination of certain premises and had been unable to find any tracks made by calves thereon. Subsequently, the defendant offered to prove through another witness that Kurz had testified "on the trial of the cause in the justice court" that he had in fact seen the calves' tracks at the time he made the examination of the premises. That offer was objected to by the defendant and the trial court sustained the objection. The ruling of the trial court was affirmed by this court, which held that proper foundation had not been laid for the introduction of the extrinsic evidence of the previous testimony of Kurz. Of particular significance is the language appearing therein at page 506, 53 N. W. at 372, wherein the court, remarking that proper foundation had not been laid, pointed out that: "The witness Kurz was not asked, when on the witness stand, whether he had testified upon the former trial that he saw the calves' tracks in the corn field." From the tenor of that language, we believe it is fair to conclude that the court in Hanscom v. Burmood, *supra*, regarded it as at least proper to question a witness in reference to the content of his previous testimony without first having introduced such testimony into evidence.

Another case pertinent to the matter with which we are now concerned is Bartek v. Glasers Provisions Co., Inc., 160 Neb. 794, 71 N. W. 2d 466 (1955). In that case, the plaintiff produced as a witness an official court reporter who had taken the testimony of two of the defendants' witnesses when they testified under oath at a prior hearing. On appeal, the defendants complained about the admission of that impeaching evidence. In deciding the case, this court set forth the rule that: " 'In order to lay a sufficient foundation

for the introduction of evidence to contradict *the statement of a witness, as to a statement alleged or denied by him,* it is indispensable that the witness's attention be called to the declaration alleged or denied to have been made, and that the time and place, when and where, and that the person to whom such statement should have been made be cited. * * *' " Bartek v. Glasers Provisions Co., Inc., 160 Neb. at 800, 71 N. W. 2d at 471, citing Wood River Bank v. Kelley, *supra,* and Hanscom v. Burmood, *supra.* Obviously, this rule assumes that the witness sought to be impeached will already have answered questions relative to his previous testimony, admitting or denying the contents thereof, long before the extrinsic evidence of that testimony is sought to be introduced. In that respect, therefore, the rule necessarily assumes it would be proper to question a witness with reference to the content of his previous testimony without first having introduced extrinsic evidence of that testimony.

If our conclusion in that regard is correct, then there remains only the question of whether an exception to the general rule exists in cases where the extrinsic evidence of previous testimony is in written form. In other words, we are faced with the question of whether the exception to the general rule applied to prior statements appearing in letters and depositions, as stated in Cropsey v. Averill, *supra,* also applies to previous *testimony* by a witness. It should be noted in this regard that the basic purpose of the rule of Cropsey v. Averill, *supra,* is to cause the *disclosure* of the writing containing the prior statement of the witness involved. In that respect, it is clear that the rule appearing in Cropsey v. Averill, *supra,* is a manifestation of the rule of disclosure formulated in The Queen's Case, 2 Brod. & Bing. 284, 129 Eng. Rep. 976, 11 Eng. Rul. C. 183 at p. 185 (1820), wherein it was held that a cross-examiner may not, in the statement of a ques-

tion to a witness, represent the contents of a letter or ask the witness whether he wrote a letter to any person with such contents, without having first shown the witness the letter and asked the witness whether he wrote that letter. Although the rule appearing in The Queen's Case, since abrogated by Parliament in 1854, is, by the terms of that case, limited to the contents of letters, this court in Cropsey v. Averill, *supra*, elected to extend that rule to apply also to cases involving a *deposition* signed by the witness. We do not believe, however, that the rule of disclosure may properly be extended in this jurisdiction to apply also to situations involving previously recorded testimony.

It is clear that even where there is some form of written record or memorandum of previous testimony, counsel may, at his option, prove the contents thereof by means of the testimony of one who was a witness to that previous testimony. Young v. Kinney, 85 Neb. 131, 122 N. W. 679 (1909). Thus, the rather strained "best evidence" rationale of The Queen's Case can have no application here. It is also clear that where the contents of previous testimony is to be proven by means of oral extrinsic evidence, there is no requirement that such evidence be introduced *before* a witness may be cross-examined as to the contents of that previous testimony. Hanscom v. Burmood, *supra;* Bartek v. Glasers Provisions Co., Inc., *supra.* This being so, we believe it would be highly inconsistent to hold that where one seeks to prove the contents of previous testimony by means of a written transcript, he is required to introduce that transcript into evidence before he may cross-examine a witness as to those contents, but, on the contrary, he may avoid that requirement, together with its considerable inconvenience and disadvantage, merely by electing to rely upon oral extrinsic evidence to make such proof. We therefore hold that in examining a witness concerning prior in-

consistent testimony of that witness, extrinsic evidence of such testimony need not be introduced into evidence at that time. This is clearly in conformity with modern thinking upon the problem. For example, Rule 613 of the Proposed Nebraska Rules of Evidence (1973), entitled Prior Statements of Witnesses, reads as follows:

"(a) Examining Witness Concerning Prior Statement. In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown or its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.

"(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d) (2)." Similarily Rule 6-13 of the Proposed Federal Rules of Evidence, 46 F.R.D. 161, makes the same provision. See, also, Symposium - The Proposed Nebraska Rules of Evidence, 53 Neb. L. Rev. 331, at 414; McCormick on Evidence (2d Ed.), pp. 55 to 57. So far as Cropsey v. Averill, *supra*, is in conflict with the rule we have adopted, it is hereby overruled.

The questions asked upon the cross-examination of the witness Runkles relative to his previous testimony were entirely proper, regardless of whether or not extrinsic evidence of that testimony had been introduced into evidence before those questions were asked. Under the circumstances, for the trial court to have in effect instructed the jury to disregard evidence impeaching the State's star witness was reversible error.

Appellant also contends that the District Court committed reversible error in refusing appellant's request

for an instruction to the jury presenting the defense of entrapment. We have reviewed the entire record in this case and do not find any evidence justifying the submission of such instruction. As a matter of fact, appellant consistently maintained throughout the trial, and based his defense upon the fact, that he had made no sale whatsoever to Runkles. Furthermore he makes it clear in his testimony that he was not trapped into anything. We quote verbatim from the record: "Q. Now, what we're saying now is not that you were entrapped into selling any drugs to anybody? A. That's right. Q. Nobody trapped you into anything? A. That's right." We also point out that the record clearly shows that the motion by the defendant for an instruction on the defense of entrapment was not specifically raised or referred to in the motion for new trial, and further there was no written request for an instruction concerning the defense of entrapment.

The judgment of the District Court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

BOSLAUGH, J., concurs in the result.