STATE OF NEBRASKA, APPELLEE, v. JERALD DEAN CROUCH, APPELLANT.

290 N. W. 2d 207

Filed March 18, 1980. No. 42849.

Robert Sullivan of Haessler, Sullivan & Inbody, for appellant.

Paul L. Douglas, Attorney General, and Linda A. Akers, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

The defendant appeals from a jury verdict of guilty to a violation of section 28-324, R. S. Supp., 1978, and from a sentence of from 10 to 20 years in the Nebraska Penal and Correctional Complex. He assigns three errors: (1) The court erred in admitting into evidence a statement of the defendant made while in the Cedar City, Utah, jail; (2) the court erred in refusing to allow defendant to refute certain testimony of a prosecution witness; and (3) the sentence was excessive.

The evidence supporting the verdict by the jury shows the following: On the evening of March 23, 1979, the defendant and Sidney VanLaningham stayed overnight at the home of VanLaningham's sister in Lincoln, Nebraska. Between 3:30 and 4 p.m. on March 24, 1979, they left the sister's house and drove to Ashland, after picking up Sidney's brother, Mark, in Saunders County, to the home where VanLaningham's estranged wife lived with her children. The three remained for about an hour, left for other errands, and returned to the VanLaningham home. Jeannine VanLaningham, Sidney's

wife, testified that the defendant was present at her home at least as late as 8 p.m. that evening. Both Mark and Sidney VanLaningham testified that at the VanLaningham home, the three discussed raising money. The defendant was acquainted with Luther Winget, an elderly man who lived alone in Ashland. The parties determined to rob Winget. With the defendant, Jerald D. Crouch, driving, the three drove to within a half block of the Winget home. Sidney and the defendant walked to the front door of the home while Mark waited in the car. Sidney and Mark are each afflicted with a disease that causes night blindness so Sidney was guided by defendant Crouch to the front door. Sidney carried a leg from an end table from the VanLaningham home, which was recovered at the Winget home, and identified as such by Mrs. VanLaningham. After knocking at the Winget door, and answering "Yes" to Winget's question "Is that you, Ben?" the parties, Sidney in the lead, forced their way into the house where Sidney, shoved by the defendant, fell on Winget and searched for Winget's wallet, which he found and kept. While Sidney was on top of Winget, the defendant at least twice kicked Winget in the face, told him to stay down, and fled. Sidney testified that in leaving he was not guided by the defendant but he could see a streetlight and headed for the light. The parties then drove to Lincoln, the defendant and Sidney each taking part of the $288 taken from Winget. Mark did not receive any of the money. Two days later, the parties left for California after being informed by Sidney's sister that the police were seeking them.

Sidney and the defendant were arrested in Cedar City, Utah. Several days later, Ronald Osborn, an investigator with the Nebraska State Patrol, arrived in Cedar City. Sidney was taken from his cell, advised of his rights by Osborn, and gave a statement implicating himself and the defendant but omitting

any reference to his brother, Mark. Sidney testified that the defendant threatened Sidney because he believed Sidney was cooperating with the police.

The defendant, on being advised of his rights, refused to give a statement and was returned to his cell. The defendant and Sidney were placed in adjoining cells and a conversation ensued within hearing of Officer Osborn who was waiting in another room for an officer to take him back to his motel. In the conversation, Crouch implicated himself in the robbery and threatened to have Sidney killed if the story were not changed when they returned to Nebraska.

The defendant asserts that the admission of this testimony of Osborn was error since the defendant had previously refused to give a statement in the absence of counsel. The cases he cites do not support his contention. He cites Massiah v. United States, 377 U. S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964), and Brewer v. Williams, 430 U. S. 387, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977). We merely point out that those cases concern statements deliberately elicited from a defendant, after indictment (Massiah), or after judicial proceedings had commenced (Brewer). There is absolutely no evidence to suggest that the statement was elicited from the defendant by surreptitious means or by interrogation or that the statement was other than voluntary. The contention is without merit. Even if the court erred in admitting Osborn's statement, it was harmless error. The threats were also testified to by Sidney VanLaningham. Generally, where evidence is objected to which is substantially identical with evidence admitted and not objected to, prejudicial error will not lie because of its admission. Meyer v. Moell, 186 Neb. 397, 183 N. W. 2d 480 (1971).

The second assignment relates to the order of the trial court refusing to allow the defendant to testify on surrebuttal. In its case-in-chief, the State intro-

duced evidence that Sidney VanLaningham had night blindness and could not see at night. The defendant testified in his own behalf and offered, in effect, an alibi as to his whereabouts at the time of the crime. The alibi was not corroborated. On rebuttal, Sidney VanLaningham testified that he could not see well enough to drive at night and, therefore, the inference that he drove from Lincoln to Ashland or in Ashland was not true. After the State again rested, counsel for the defendant asked leave to withdraw his rest and to again call the defendant who would be expected to testify that on the trip to Utah, Sidney VanLaningham drove at night. The trial court declined to allow the defendant to withdraw his rest. In its ruling, the trial court said: "Now the evidence which you propose to show by your rebuttal simply augments evidence which already appears in the record and which was available to the defendant and to which he testified indirectly at the time that he appeared on the stand. * * * I am going to overrule the Motion."

A motion to reopen a criminal case to allow introduction of further evidence is addressed to the sound discretion of the trial court. Blair v. State, 72 Neb. 501, 101 N. W. 17 (1904); State v. Pratt, 197 Neb. 382, 249 N. W. 2d 495 (1977); State v. Keith, 189 Neb. 536, 203 N. W. 2d 500 (1973). The denial of the motion to reopen cannot be said to constitute an abuse of discretion. The assignment of error is without merit.

The last assignment is also without merit. The sentence of from 10 to 20 years is well within the limits of the penalty provided in section 28-105, R. S. Supp., 1978, of from 1 to 50 years.

The crime was brutal. Defendant has previously been placed on probation for breaking and entering and has twice served sentences in county jails for breaking and entering and for possession of marijuana paraphernalia. Since the sentence imposed did not constitute an abuse of discretion and it is

within the limits of the statute, it must be affirmed. State v. Freeman, 201 Neb. 382, 267 N. W. 2d 544 (1978).

The judgment and sentence are affirmed.

AFFIRMED.