STATE OF NEBRASKA, APPELLEE, v. LARRY E. PACKETT, APPELLANT.

294 N. W. 2d 605

Filed June 24, 1980. No. 42857.

Toney J. Redman, for appellant.

Paul L. Douglas, Attorney General, and Lynne Rae Fritz, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

The defendant was charged in the District Court for York County, Nebraska, with having, on August 8, 1978, assaulted Janice Prater with intent to inflict great bodily injury, with having kidnapped her, and with the use of a firearm in the commission of a felony, all in violation of Neb. Rev. Stat. §§ 28-413, 417, and 1011.21 (Reissue 1975), respectively. He was found guilty by a jury and sentenced to consecutive terms of 16 to 40 years on the kidnapping charge, 6 to 18 years on the assault charge, and 3 to 10 years on the firearm count.

He has appealed to this court and has assigned and

argued the following alleged errors: (1) He was deprived of a fair trial because of out-of-court conversations concerning the trial between the prosecutor and the trial judge without defense counsel being present; (2) The court erroneously excluded testimony and evidence offered to impeach a prosecuting witness; (3) The evidence was insufficient to support the conviction on the assault charge because there was a lack of evidence of intent to inflict great bodily harm upon the victim; (4) The court erred in not granting a new trial on the basis of newly-discovered evidence, to wit, an unsigned, undated, typewritten letter received by defense counsel and addressed to a district judge (not the judge who presided at trial) in which various accusations were made concerning improper conduct by police officers and the prosecutor prior to trial; (5) Refusal of the court to admit surrebuttal testimony by the defendant; and (6) Excessiveness of the sentences. We affirm.

A brief outline of the State's evidence and that of the defendant will give a perspective from which to consider the assignments. Further details as necessary will be recited as each assignment is discussed. At 12:05 p.m. on August 8, 1978, Janice Prater was walking home to lunch from her place of employment in the city of York. As she walked, a male, driving a pickup truck, stopped at the curb near her and asked directions. Janice, a relatively new resident of York, suggested he ask for information at a nearby gas station. As she started to walk away, the man pulled a gun, got out of the vehicle, ordered her to get into the truck, and threatened to shoot her if she did not. She complied. As he drove, he kept the gun, which he had on his lap, pointed toward her. When the truck neared the York airport, traveling at a speed of about 40 miles per hour, Janice opened the door and jumped out, fell to the ground, and then ran to the vehicle of a motorist who had stopped at

an intersection and who had observed her jump from the truck. The matter was immediately reported to the police. Janice gave them a description of the man from which a composite drawing of the abductor was made. This, together with other evidence, particularly a description of the truck, led to the arrest of the defendant. Janice positively identified the defendant in a lineup of five men fitting the same general description.

The defendant denied that he was the perpetrator and presented an alibi defense. This was, to some extent, corroborated by the testimony of Dick Christian, the witness whose testimony relates to the assignment of error with reference to impeachment.

We now consider the assignments in the order in which they were listed.

During the course of the trial, the prosecutor made a telephone call to the trial judge without knowledge or presence of defense counsel one evening after adjournment. The next morning, before the presentation of testimony commenced, the trial judge, in open court, indicated his concern about the call and read a disclosure into the record. The substance of the disclosure was that, after adjournment, the prosecutor appeared ex parte before the court, made complaints as to the extent of cross-examination being allowed the defendant, and argued in favor of more restrictive cross-examination. This process was repeated later in the evening by telephone. The prosecutor responded that the reason for his protest was that prolonged cross-examination permitted the defense made it difficult and burdensome to schedule the appearance of prosecution witnesses and was a burden to the witnesses, some of whom had to come from long distances or leave their employment. The prosecutor also declared that he had expressed to the judge a concern about a defense proposal to call an expert on hypnosis without disclosing his schedule, which might not give the State appropriate time to

respond. The court gave its opinion that nothing discussed provided grounds for a mistrial.

It is generally improper for counsel, during the pendency of a proceeding, to communicate with the judge as to the merits of the case. Code of Professional Responsibility, DR 7-110. It would appear that objections to, arguments about, or evidence affecting the limits of cross-examination ought to be made only in the presence of or after appropriate notice to opposing counsel. In this case, however, there is nothing in the record from which it may be reasonably inferred that prejudice resulted to the defendant. The record does not show that the defense was subsequently improperly restricted in either direct or cross-examination. The only errors which require reversal of a cause are those prejudicial to the right of the accused, or which constitute the denial of a substantial legal right. *State v. Atkinson,* 190 Neb. 473, 209 N.W.2d 154 (1973).

The defendant testified that at the time the crimes in question were committed, he was at Christian's service station at Beaver Crossing, Nebraska. This village is about 25 miles from the city of York. The defendant testified that he arrived at the station at about 9:45 a.m. and that he was at the station until at least 12:30 p.m. because it took that long to charge some tractor batteries he had brought to the station. To corroborate the alibi, he called the witness Dick Christian, the operator of the station. Christian testified that he did not know defendant well, but that he had seen him 6 to 10 times over a period of about 6 months. He further testified that defendant was at his station on August 8, 1978. His testimony was substantiated by a station ticket in Christian's handwriting dated "8-8 1978," showing a charge to Larry Packett for 12 gallons of gasoline. The ticket also bore the signature of Larry Packett. This ticket was the means by which Christian was able to recall and verify that the defendant was at

the station on the day in question. The witness also remembered that on that day he "threw a charge" into some batteries for the defendant for which he made no charge. He was asked these questions and gave these answers:

Q. And then, in any event, the day that you took that ticket, he was there until 12 or 12:30, did you say?

A. That's what I said on that tape.

Q. Okay, we'll get to that in just a minute. I apologize, I didn't mean to say that. But your memory at one time was that you visited with him for a long time, being there from 12 or 12:30?

A. Right.

Q. Do you remember that time that you visited with him for so long, what time he got there?

A. No. Having been questioned so many times about this, now they have got me to where I just can't stand on my word and say I remember precisely because there's too much traffic in our place of business and I —

Also introduced was a check signed by Larry Packett, dated August 10, 1978, payable to Christian Service, in the amount of $12. On the memo portion of this check was printed by hand: "Gas & Tom's Battery." Christian acknowledged having received that check some time after August 8. The prior tape recording referred to in Christian's answer above was offered in evidence by the defendant, was objected to as hearsay, and the objection was sustained. The tape was received as an offer of proof. On the tape recording, Christian stated that he charged the batteries until around noon, when he heard the noon whistle blow, and that defendant stayed and talked until about 12:30 p.m.

On cross-examination, it developed that Christian

was less certain about the time consumed in battery charging and the time that the defendant left the station. The gist of his testimony on cross-examination was that it was possible that, depending upon the method that he used to charge the four batteries, the times may have been different. If he charged them in pairs, it would have taken 30 to 45 minutes for each pair. Also by refreshing his recollection by means of a cash payout on a register tape for that date, he testified that a particular payout transaction to a salesman occurred after defendant had left. Since the salesman always called before 11:30 a.m., Christian testified that defendant would have left by then. The $8 transaction with defendant, even though a charge, is recorded on the register tape. The charge is made after the service is rendered. The $8 charge appears on the tape before the cash payment to the salesman. The salesman verified the time of his departure from the station.

Christian acknowledged that what he said on the tape was different from what he was saying on cross-examination.

The court did not err in refusing the tape recording. If the offer of the extrinsic evidence in the form of the tape was offered for impeachment purposes, then it was inadmissible because the witness admitted making the earlier contradictory statements. See Neb. Rev. Stat. § 27-613(2) (Reissue 1975). That section has made only slight changes in the previous rule. It says, in part:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require.

The prior rule was:

In order to lay a sufficient foundation for

> the introduction of evidence to contradict
> *the statement of a witness, as to a state-*
> *ment alleged or denied by him,* it is indis-
> pensable that the witness's attention be
> called to the declaration alleged or denied to
> have been made, and that the time and place,
> when and where, and that the person to whom
> such statement should have been made be
> cited.

*State v. Wilmore,* 192 Neb. 807, 812, 224 N.W.2d 756, 759 (1975) (quoting earlier cases) (emphasis in original).

> The difference between that rule and Rule
> 613 of the Nebraska Evidence Rules is that it
> is no longer necessary for the impeaching
> attorney to lay that sort of foundation prior
> to producing extrinsic evidence. Under Rule
> 614 he need only afford the witness an oppor-
> tunity to explain or deny, while affording the
> opposite party an opportunity to interrogate
> the witness thereon.

NCLE, Nebraska Rules of Evidence § 6, p. 26 (1975).

If offered as corroborative evidence to support the testimony that defendant left at 12:30 p.m., it was not admissible for that purpose. The rules are: Prior consistent statements are not admissible as substantive corroborative evidence. 31A C.J.S. *Evidence* § 216 (1964); *Anderson v. Evans,* 168 Neb. 373, 96 N.W.2d 44 (1959). The exception to the rule mentioned in that case appears to have been changed by the enactment of Neb. Rev. Stat. § 27-801(4)(a)(ii) (Reissue 1975), which states that a prior consistent statement is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement, "and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . . ." *State v. Pelton,* 197 Neb. 412, 249 N.W.2d 484 (1977).

See, also, Fed. R. Evid. 801(d)(1)(B); *United States v. Scholle,* 553 F.2d 1109, 1119-20 (8th Cir. 1977). No contention is made in this case that Christian's testimony was the result of recent fabrication or improper influence. The record indicates that it was not. The second assignment is without merit.

The third assignment raises the question whether the evidence is sufficient to support a finding by the jury that the assault was accompanied by an intention to commit great bodily harm. We have concluded on several occasions that a gun or other deadly weapon was sufficient under the circumstances of those cases to support a finding of intent to do great bodily harm. *Vanderpool v. State,* 115 Neb. 94, 211 N.W. 605 (1926); *State v. Sampson,* 203 Neb. 786, 280 N.W.2d 81 (1979); *State v. Lang,* 197 Neb. 47, 246 N.W.2d 608 (1976). In the first-cited case, the pointing of a gun, accompanied by threats, was found sufficient to support a finding of the necessary intent. In that case, we said:

> It is an assault for a person to unlawfully point a loaded revolver at another in a menacing or threatening manner. Whether such act is done with intent to inflict great bodily injury must be determined by all of the facts and circumstances of each particular case. The mere fact that defendant did not shoot when he had the opportunity does not necessarily show that he did not intend to do so. The intent of the assault and not the act in fact committed, provided there was an assault, constitutes the gist of an assault with intent to inflict great bodily injury.

*Vanderpool, supra* at 97, 211 N.W. at 606. In the second case, the gun was fired, striking the victim's car. The defendant testified he merely intended to frighten. We upheld the evidence as sufficient to support the verdict. In the third case we held:

> [T]o constitute the offense of assault with

intent to do great bodily harm there must be an unlawful assault coupled with a present ability and intent to injure, but no actual battery need occur.

*Lang, supra* at 49, 246 N.W.2d at 610. See, also, *State v. Thompson,* 13 Wash. App. 1, 533 P.2d 395 (1975); *Moyer v. People,* 165 Colo. 583, 440 P.2d 783 (1968).

In this case, the evidence shows that, when the defendant ordered the victim into the truck, the order was accompanied by the threat: "or I'll put a bullet right through your tit." Evidence further indicates that, while driving away with the victim, the defendant had on his lap, in addition to the gun, a metal bar. Before the victim escaped, there was a conversation from which the jury was entitled to infer that the defendant intended a sexual assault of some sort and that he would accomplish it by whatever means or force would be necessary.

At the time of the hearing on the motion for a new trial, the defendant amended his previous motion by making reference to the anonymous letter described in the fourth assignment of error. We will treat that part of the motion as one founded upon newly-discovered evidence. Counsel indicated that the letter had been in his possession for about 1½ months. He had been unable to determine its origin despite the fact that material contained in the letter, descriptive of the employment status of the writer, would, in all probability, fit only a very few persons. Disregarding the fact that the letter provided, in and of itself, no ground for a new trial, it is plain that there was no showing in the manner required by statute that there was admissible evidence of the facts alleged in the letter. The motion also was legally insufficient. Neb. Rev. Stat. §§ 25-1142(7) and 1144 (Reissue 1975) together provide that, if the ground is newly-discovered evidence, the motion "must be sustained by affidavits showing their truth." There is no such

showing here. The fourth assignment is lacking in merit.

The fifth assignment relates to the court's rejection of an offer of proof of the defendant's testimony on surrebuttal. After both sides had rested, the defense offered the testimony of the defendant as to the manner in which he had removed the batteries from Tom Bolin's tractor, which was stored at the defendant's place. The purpose of the testimony was to respond to testimony of a rebuttal witness for the State who had purchased the Bolin tractor at about 4 p.m on August 8, 1978. That witness had testified that the battery cables on at least some of the batteries did not appear to have been removed recently. The gist of the offer of surrebuttal testimony was that the defendant had left some of the cables on the batteries when he took them to Christian's for charging earlier in the day.

The offered surrebuttal testimony was, to a large degree, repetitive because it only amplified the testimony as to the removal of the batteries. *State v. Crouch,* 205 Neb. 781, 290 N.W.2d 207 (1980), presented to this court a question under a state of facts which is, in principle, identical to that now presented. We upheld the action of the trial court in denying surrebuttal testimony after both sides had rested, saying: "A motion to reopen a criminal case to allow introduction of further evidence is addressed to the sound discretion of the trial court." *Id.* at 785, 290 N.W.2d at 209. The court did not abuse its discretion in this case.

With reference to the claim of excessiveness of sentence, the rule is: "[A] sentence imposed within statutory limits will not be disturbed on appeal unless there has been an abuse of discretion." *State v. Muniz,* 203 Neb. 206, 208, 277 N.W.2d 712, 713-14 (1979). The statutory limits of the various charges of which the defendant was convicted are: assault with intent to inflict bodily harm, 1 to 20 years; kid-

napping (in the form charged), 3 to 50 years; and use of a firearm in the commission of a felony, 3 to 10 years. On the first two charges, the defendant was sentenced to somewhat less than the maximum. On the third charge, he received the maximum. Our examination of the record, including the pre-sentence investigation, convinces us that there was no abuse of discretion in making all the sentences consecutive. Under the statute, the sentence on the third charge was required by law to be consecutive.

AFFIRMED.