STATE OF NEBRASKA, APPELLEE, V. NORMAN D. JACKSON, APPELLANT.

348 N.W.2d 876

Filed May 11, 1984. No. 83-498.

Thomas M. Kenney, Douglas County Public Defender, and Victor Gutman, for appellant.

Paul L. Douglas, Attorney General, and Mark D. Starr, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

Following a jury trial, Norman Jackson was convicted of the December 24, 1982, offenses of robbery and use of a firearm in the commission of a felony. On this appeal he has assigned as error that the trial court (1) improperly permitted the State to impeach the testimony of its own witnesses, and (2) failed to instruct the jury in a timely manner that the prior contradictory statements were not received as evidence of the facts declared, but only for the purpose of attacking the credibility of the witnesses.

At approximately 11:50 a.m. on the abovementioned date, the North Side Bank in Omaha was robbed by three masked men, at least two of whom were armed. At about the same time, a man was seen walking back and forth beside an automobile which was parked approximately 1 block from the bank. Two men wearing masks were observed to jump a hedge, run toward that car, and get into it. The man walking nearby got into the driver's side and the car drove away. A witness noted the license number on the automobile, which identified it as belonging to the defendant.

Testimony, concerning which there was no objec-

tion, would tend to establish that sometime between 4 and 5 o'clock in the afternoon of December 24, a George Crumbley went to the apartment of Shirley Burnett, where he observed her nephew, the defendant, counting money into stacks of three, four, or five rows. This same witness testified, without objection, that on December 26, Shirley Burnett brought to Crumbley's apartment a shoebox containing two handguns which were connected to the robbery. These guns were kept in the possession of the witness until seized pursuant to a search warrant.

The complained-of errors center around the testimony of the State's witnesses, Shirley Burnett, an aunt of the defendant, and Thomas Coleman, her boyfriend.

Ms. Burnett testified that she had found two handguns in her closet, which she took over to her neighbor, George Crumbley, for safekeeping. When asked what she said to Crumbley, she answered that she asked him to keep the guns for her because she had found them in her closet and did not know to whom they belonged. The prosecuting attorney then asked her if she had not told Crumbley that she *thought* they belonged to the defendant. "I don't recall telling him anything like that. What I told you when you asked me would I say that: I said, 'No, I didn't say anything like that,' but you told me that George Crumbley said that I told him that." At this point the defendant objected to this line of questioning as improper impeachment. The objection was overruled. George Crumbley, who later testified, was never asked about that conversation.

The witness Burnett was then asked: "Did you, on that afternoon [December 24, 1982], go to the home of Thomas F. Coleman with Norman Jackson for the specific purpose of talking to Mr. Coleman about Norman Jackson?" She replied, "No. Never." She was then asked:

All right, if Mr. Coleman testifies or if he has testified before in this case that, in fact, you and

> Norman Jackson did come over to his house . . . to talk to him about the concerns that you had about Norman Jackson being in trouble, then would he be lying?

Her answer was, "Yes, he would." No testimony of Thomas Coleman was ever offered in support of the last question by the prosecution.

Finally, Shirley Burnett was asked whether Norman Jackson was counting out money in her presence and in the presence of George Crumbley. She answered, "I've never seen him counting any money before." The prosecutor then followed with this question:

> If George Crumbley comes into court and testifies that on that day, December 24th, 1982, that when he went over to your apartment, that you were there, Fred Coleman was there, your children and Norman Jackson, and that while he was there, Norman Jackson was counting out denominations of money on the floor. . . .

She answered, "I would have to say he was telling a lie because I'd never seen that."

To the extent that the State would claim the statement of the witness that she did not see the defendant counting out money was impeached, that claim must fail. George Crumbley did testify that he saw Jackson counting out money in the living room, but he also said that at that time Ms. Burnett was in the kitchen.

There are several reasons why the questioning of Shirley Burnett was improper. In the first place, even assuming for the moment that this was a proper situation in which to bring forth impeachment testimony, the fact remains that it was not accomplished. An interrogator may not inquire of a witness, "Isn't it true that you told $X$ that you saw $Y$ shoot $Z$?" leaving the impression that such was the case, and then not call $X$ to establish that fact. Yet, that is precisely what the prosecutor did in this instance.

As to the ownership of the gun, the most that can be said is that an attempt was made to get in evidence that the witness *thought* the gun was owned by the defendant. There was no foundation for such a statement and it certainly is not relevant as to what her opinion might be of such ownership. Similarly, whether the witness Burnett had a "concern" about her nephew that she related to Thomas Coleman was certainly not relevant to the issue of who robbed the bank.

Finally, and perhaps more to the point, the questioning of this witness flies right into the face of our holdings in *State v. Isley*, 195 Neb. 539, 239 N.W.2d 262 (1976), and *State v. Brehmer*, 211 Neb. 29, 317 N.W.2d 885 (1982).

In *Isley* we said that a witness may be impeached by showing prior contrary statements as to a matter *relative* to the issue. In *Brehmer* we held that the State may not use a prior inconsistent statement of a witness under the guise of impeachment for the primary purpose of placing before the jury substantive evidence which is not otherwise admissible. This is exactly what the State did in this instance.

Although evidence of possession of the guns by the defendant, and his counting of the money, was testified to by the witness Crumbley, the improper "impeachment" evidence offered through the witness Burnett was certainly corroborative of that testimony and we cannot say that its admission only amounted to harmless error.

The witness Thomas Coleman, also called by the prosecution, testified that Shirley Burnett had found some guns in her closet, and that was all he knew about it. He did not know who had had the guns in their possession. He was then asked outright if he did not know about the defendant ever being in possession of the handguns, or of being on the floor counting money, and he answered that he did not.

Coleman was further asked if he had not made contrary statements both to a police officer and in

sworn testimony at the defendant's preliminary hearing. He admitted that he had indeed made such statements in each instance, but that "it was false pretenses," not true. Normally, that should have ended the matter.

If a witness, not a party, admits making earlier statements contradictory of his testimony given at trial, then the earlier statements are not admissible for purpose of impeachment. *State v. Packett*, 206 Neb. 548, 294 N.W.2d 605 (1980).

However, we must take into account Neb. Rev. Stat. § 27-801(4)(a)(i) (Reissue 1979), which provides:

> (4) A statement is not hearsay if: (a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (i) inconsistent with his testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.

The result of this section is to declare what formerly constituted hearsay evidence and available for impeachment purposes only to become substantive evidence of the fact alleged.

Maine has a similar statute. In *State v. Creamer*, 379 A.2d 733 (Me. 1977), that court said at 734:

> Rule 801 states in the plainest terms that the first-trial testimony of Mrs. Eldridge, because ". . . given under oath subject to the penalty of perjury at a trial . . ." is a "statement . . . [which is] not hearsay." Hence, it is admissible as substantive evidence (absent other independent grounds to exclude it).

Although not necessary to a decision in this case, the defendant's last assignment of error is without merit. The court properly instructed as to the effect of impeachment evidence at the close of all of the case. If the defendant desired the instruction to be given immediately after hearing the specific evidence, he should have requested it. The trial court

is not required to give a cautionary instruction in the absence of a request. *Miller v. State*, 173 Neb. 268, 113 N.W.2d 118 (1962).

The judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.