STATE OF NEBRASKA, APPELLEE, V. JAMES H. JOHNSON, APPELLANT.

370 N.W.2d 136

Filed July 5, 1985.    No. 84-677.

Dennis R. Keefe, Lancaster County Public Defender, and Sean J. Brennan, for appellant.

Paul L. Douglas, Attorney General, and L. Jay Bartel, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

James H. Johnson appeals his conviction, resulting from a jury trial, for first degree sexual assault on a person less than 16 years of age. See Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1979). We affirm.

The victim, an 11-year-old boy at the time of the sexual assault, lived with his mother and Johnson in a house in Lincoln, Nebraska. The victim's mother and Johnson had planned to marry. Sometime between the dates of August 29 and October 20, 1983, Johnson penetrated the victim's body during anal intercourse. However, the victim did not immediately report this sexual assault because he was afraid Johnson would hurt him.

Some weeks after the assault, at the victim's home on the evening of October 20, 1983, the victim's mother discovered Johnson lying on the living room couch with his penis exposed, while the victim was present. Later that evening, the mother asked the victim if Johnson "was doing anything." The victim then informed his mother of Johnson's earlier sexual assault. After this conversation the mother and son attempted to leave the house, but Johnson "got angry . . . grabbed [the mother] by the shoulders and pushed her into the bedroom and pushed her

down on the bed." While that was occurring, the son called the police. When the police arrived, the mother told a policeman, Officer Domangue, that Johnson had "raped" her son. The police arrested Johnson. Detective Sorensen was assigned to the case and later on the night of October 20 interviewed the mother and her son. During this interview, the mother stated she had seen Johnson exposing his genitals to the victim earlier that evening.

On November 28, 1983, the mother received a letter from Johnson, who was in jail awaiting trial. In that letter Johnson denied any sexual assault on the victim and stated that if the sexual assault charge went to trial, the "truth" would come out and the boy would be "taken away" from his mother. In response to Johnson's letter, and fearing loss of her son, the mother instructed the victim to lie about the sexual assault by Johnson. The following week the mother visited Johnson in jail. Johnson directed the mother to telephone and inform his attorney that the victim son had lied about Johnson's sexual assault on the victim. A few days later, pursuant to Johnson's direction, the mother telephoned and informed Johnson's attorney that the victim had just said that he fabricated the entire account of the sexual assault by Johnson. The mother was not aware that this telephone conversation was tape recorded by Johnson's attorney.

After the tape-recorded telephone conversation, the mother and son went to the office of Johnson's attorney to answer questions about the assault. In addition to the mother, victim, and Johnson's attorney, a court reporter was present in the attorney's office, administered an oath to the mother and her son, and recorded questions and answers during the interview in the attorney's office. During the interview, the victim stated that Johnson had not sexually assaulted him and that the entire account was a lie to prevent his mother's marrying Johnson. Also, during the interview, the victim's mother stated that she had lied about seeing Johnson with his genitals exposed in the presence of her son on October 20, 1983.

At trial the victim testified that Johnson sexually assaulted him. Johnson's attorney questioned the victim and his mother about their statements made before trial, namely, the sworn

statements at the attorney's office and the mother's tape-recorded telephone conference with Johnson's attorney.

Concerning the victim's sworn statement at the attorney's office, on cross-examination the victim admitted that he had given the sworn statement, namely, the victim had lied about the assault on him by Johnson. On redirect examination the victim explained that his statement about the fabricated assault was made in response to his mother's instruction to lie about the assault.

Defense counsel extensively cross-examined the victim's mother about her statement given at the office of Johnson's attorney. In his questions asked on cross-examination of the mother, counsel on more than one occasion emphasized existence of an oath regarding the statement given at the attorney's office; for example, "[d]uring this sworn statement . . .," "under oath," and the "same oath . . . that you took today when you took the witness stand . . . ." During cross-examination, the mother admitted giving her sworn statement at the attorney's office, namely, she had not seen Johnson with his genitals exposed in the presence of her son. When asked on cross-examination about her telephone conversation with Johnson's attorney, the mother acknowledged that in such telephone conversation she had told Johnson's attorney that the victim said he had lied about occurrence of the assault.

When Johnson sought to introduce a transcript of the sworn statement (interview) given by the victim, the court ruled that the victim's sworn statement was hearsay and sustained the State's objection. Upon objection by the State to the introduction of the tape-recorded telephone conversation between Johnson's attorney and the victim's mother, the court, explaining that the mother had not denied the telephone conversation or its contents, sustained the State's objection.

On redirect examination the mother explained that, motivated by fear of losing her son, she had made untrue statements during the interview under oath in defense counsel's office.

After the victim and his mother had testified, the State called Detective Sorensen, who, over Johnson's objection, testified

that the mother, on the evening of October 20, told Sorensen she had seen Johnson in her home earlier that evening with his genitals exposed in the presence of her son.

After the State's rest, Johnson recalled the victim and asked whether on the night of October 20, 1983, the victim had told Officer Domangue that "Johnson did not sexually assault" the victim. The victim denied such statement to the officer. Johnson then called Officer Domangue, but on objection by the State, the court would not allow Officer Domangue to answer questions concerning the victim's October 20 conversation with the officer. Johnson's offer of proof indicated that if Officer Domangue had been allowed to testify, the officer "would have testified that [the victim], in response to the question by the officer [whether Johnson sexually assaulted the victim] said no, he tried to . . . but I wouldn't let him, I ran away."

In his assignments of error Johnson complains about the trial court's rulings on admission and exclusion of evidence and focuses primarily on the character of prior statements, inconsistent and consistent, as substantive evidence pursuant to Rule 801(4)(a) of the Nebraska Evidence Rules, Neb. Rev. Stat. § 27-801(4)(a) (Reissue 1979).

First, Johnson claims the statement of the victim during the interview at the office of Johnson's attorney was admissible as substantive evidence under Rule 801(4)(a)(i), which in part provides:

(4) A statement is not hearsay if:

(a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (i) inconsistent with his testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . . .

Second, Johnson contends the mother's statement on the night of Johnson's arrest—that she saw Johnson exposing himself to her son earlier that evening—is inadmissible as a prior consistent statement under Rule 801(4)(a)(ii):

(4) A statement is not hearsay if:

(a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement,

and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . . .

Third, Johnson argues the inconsistent statements at the attorney's office were admissible to impeach the credibility of the witnesses under Rule 613 (Neb. Rev. Stat. § 27-613 (Reissue 1979)).

Fourth, Johnson asserts that the mother's recorded telephone call to Johnson's attorney was admissible to impeach the mother.

Fifth, Johnson claims the victim's statement to Officer Domangue—that Johnson attempted, but did not complete, a sexual assault on the victim—was admissible to impeach the victim.

In *State v. Jackson*, 217 Neb. 363, 348 N.W.2d 876 (1984), this court held that, as a result of Rule 801(4)(a)(i) of the Nebraska Evidence Rules, what was previously characterized as hearsay available for the purpose of impeachment only has now become substantive evidence of fact contained in the statement, provided the requirements prescribed by Rule 801(4)(a)(i) are satisfied.

Consequently, the first question is whether the sworn statement given by the victim at the office of Johnson's attorney was "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." It is Johnson's position that the interview at his attorney's office qualifies as a "proceeding" within the contemplation of Rule 801(4)(a)(i).

Rule 801(4)(a)(i) of the Nebraska Evidence Rules is patterned on Fed. R. Evid. 801(d)(1)(A). Accordingly, we examine judicial construction of the federal counterpart to Rule 801(4)(a)(i) of the Nebraska Evidence Rules.

In suggesting that the interview of the victim at the attorney's office was a "proceeding," Johnson relies on *United States v. Castro-Ayon*, 537 F.2d 1055 (9th Cir. 1976), in which a sworn interrogation conducted by an agent of the border patrol of the Immigration and Naturalization Service qualified as an "other proceeding" within the meaning of Fed. R. Evid. 801(d)(1)(A).

*United States v. Castro-Ayon, supra*, is apparently unique—and likely to remain so—if subsequent decisions by other federal courts are any indication. For example, in *United States v. Livingston*, 661 F.2d 239 (D.C. Cir. 1981), the court concluded that a witness' sworn statement to a postal inspector at the witness' home does not come within the ambit of "other proceedings." A sworn statement made to an FBI agent was not admissible as substantive evidence under Fed. R. Evid. 801(d)(1)(A). *United States v. Ragghianti*, 560 F.2d 1376 (9th Cir. 1977). A sworn statement given to federal agents investigating a firebombing "was not made at a trial, hearing, or other proceeding . . . [and] would fail to qualify as substantive evidence under Rule 801." *Martin v. United States*, 528 F.2d 1157, 1161 (4th Cir. 1975).

A "proceeding" contemplated by Rule 801(4)(a)(i) is a formal action before a judicial tribunal, as well as an action before a quasi-judicial officer or board, invoked to enforce or protect a right. See, *State ex rel. Johnson v. Ind. School Dist. No. 810*, 260 Minn. 237, 109 N.W.2d 596 (1961); *Matter of Queens-Nassau Transit Lines v. Maltbie*, 183 Misc. 924, 51 N.Y.S.2d 841 (1944). In the case before us the interview in the office of Johnson's attorney was a unilateral investigation concerning a claim or accusation against the attorney's client and lacked prescription of any procedure for conducting the inquiry. Although such interrogation was related to a criminal charge pending before a court, the statement occurred in a setting and atmosphere lacking the degree of formality and reliability envisioned by Rule 801(4)(a)(i) of the Nebraska Evidence Rules, namely, the orderly conduct of activity before a judicial or quasi-judicial officer or board. Cf. *United States v. Dunn*, 577 F.2d 119 (10th Cir. 1978) (a sworn statement taken at an office of defense counsel would not sustain a conviction under 18 U.S.C. § 1623 (1976) for making a false declaration in a proceeding "before or ancillary to any court or grand jury"). See 4 D. Louisell & C. Mueller, Federal Evidence § 419 (1980). If the position suggested by Johnson were adopted, every unilateral or ex parte statement made under notarial oath would qualify as substantive evidence under Rule 80l(4)(a)(i). The very function of the adversary process would be in

jeopardy. We conclude that the prior inconsistent statement of the victim was not made in a "proceeding" within the meaning of Rule 801 of the Nebraska Evidence Rules and, therefore, was not admissible as substantive evidence authorized under Rule 801(4)(a)(i). In view of our determination that the statement sought to be introduced as substantive evidence was not given at a "proceeding," we need not examine the other prerequisites for admissibility of a statement as substantive evidence under Rule 801(4)(a)(i).

Next, Johnson argues that it was prejudicial error to allow Officer Sorensen to testify about the mother's prior statement on the evening of Johnson's arrest—the mother's statement that she saw Johnson's genitals exposed in the presence of the victim. In *State v. Packett*, 206 Neb. 548, 555, 294 N.W.2d 605, 609 (1980), this court noted that, traditionally, prior consistent statements were not admissible as substantive evidence, but recognized the change effected in the traditional rule by enactment of Rule 801(4)(a)(ii), and stated:

> The rules are: Prior consistent statements are not admissible as substantive corroborative evidence. 31A C.J.S. *Evidence* § 216 (1964); *Anderson v. Evans*, 168 Neb. 373, 96 N.W.2d 44 (1959). The exception to the rule mentioned in that case appears to have been changed by the enactment of Neb. Rev. Stat. § 27-801(4)(a)(ii) (Reissue 1975), which states that a prior consistent statement is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement, "and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . . ."

By defense counsel's repeated reference to the mother's statement made under oath at the office of Johnson's attorney, defense counsel had sown the sinister seed of innuendo that the mother at trial consciously changed her account of the incident in question, that is, the mother's previous statement had been solemnized by an oath, her promise to tell the truth, but, notwithstanding similar attendant solemnity at trial, the mother's testimony was purposely and diametrically opposed to

her sworn statement given at the attorney's office. In short, the implication was inescapable: deliberate falsehood was the only explanation for the difference between the mother's testimony and her out-of-court statement.

Although decided before adoption of the Federal Rules of Evidence, *Hanger v. United States*, 398 F.2d 91, 105 (8th Cir. 1968), contains pertinent language:

> [W]e think that in the situation where a key witness admittedly changes his story or his recital of important relevant events and admits that his former statements in regard to the proceedings in question were a fabrication, that he should be allowed to not only testify as to what he now swears is a true recital of the events, but to also testify as to the reasons for his fabrication and the reasons why he decided to change his story; and all of the incidents and factors that shed light upon his credibility, both pro and con, are admitted, subject to the Court's discretion, and left to the jury for its evaluation and determination. Naturally, a person who has made admittedly inconsistent statements stands impeached, but the court and the jury are still charged with the responsibility of ascertaining which evidence is to be credited and only by a full exposure of the relevant and pertinent facts in this difficult situation can the jury make an intelligent and reasonable attempt to ascertain the truth. . . . It is not a swearing match as to what was said but presents the crucial issue of which statements constitute a correct recital of the events under consideration. In this posture relevant evidence, particularly evidence which is subject to cross-examination, should in the discretion of the trial court be submitted to the jury for its evaluation.

See, also, Graham, *Prior Consistent Statements: Rule 801(d)(1)(B) of the Federal Rules of Evidence, Critique and Proposal*, 30 Hastings L.J. 575 (1979).

If an attack on a witness' credibility through use of an inconsistent statement is accompanied by, or interpretable as, a charge of a plan or contrivance to give false testimony, proof of a prior consistent statement before the plan or contrivance was formed tends "strongly to disprove that the testimony was the

result of contrivance. . . . It is for the judge to decide whether the impeachment amounts to a charge of contrivance, and ordinarily this is the most obvious implication." See McCormick on Evidence § 49 at 119-20 (E. Cleary 3d ed. 1984).

The mother's prior consistent statement made to Officer Domangue contains evidence relevant to the charge against Johnson. See Rule 401 of the Nebraska Evidence Rules (Neb. Rev. Stat. § 27-401 (Reissue 1979)). Subject to the balance found in Rule 403 of the Nebraska Evidence Rules (Neb. Rev. Stat. § 27-403 (Reissue 1979)), admission of the mother's prior consistent statement was a matter within the discretion of the trial court. We find no abuse of discretion by the trial court in admitting the mother's prior consistent statement as substantive proof of the charge against Johnson. Cf., *State v. Brown*, 190 Neb. 96, 206 N.W.2d 331 (1973); *State v. Searles*, 214 Neb. 849, 336 N.W.2d 571 (1983).

We now consider Johnson's contentions regarding other evidence excluded at trial. Extrinsic evidence of a prior inconsistent statement may be admitted under Rule 613(2) (Neb. Rev. Stat. § 27-613(2) (Reissue 1979)) of the Nebraska Evidence Rules if the declarant is given an opportunity to explain or deny the statement and the opposing party is afforded the opportunity to interrogate the declarant. Depending on counsel's strategy, the inconsistent statement can be introduced prior to giving the declarant an opportunity or chance to explain. See *State v. Price*, 202 Neb. 308, 275 N.W.2d 82 (1979). However, if counsel chooses to question the declarant concerning the inconsistent statement before introducing the extrinsic evidence of the inconsistent statement, and if the declarant admits making the inconsistent statement, counsel may not introduce extrinsic evidence of the inconsistent statement. See, *State v. Packett*, 206 Neb. 548, 294 N.W.2d 605 (1980); *State v. Drew,* 216 Neb. 685, 344 N.W.2d 923 (1984). See, also, 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 613[04] (1982). "If the witness being impeached admits to the prior inconsistent statement, then he has been impeached and further extrinsic evidence is neither necessary nor generally allowed." Fenner, *Competency and Examination of Witnesses Under Article VI of the Federal Rules of Evidence and the*

*Nebraska Evidence Rules*, 9 Creighton L. Rev. 559, 600 (1976). When the witnesses admitted giving prior sworn statements contradicting their testimony at trial, each witness' admission at trial was a self-impeachment so that further extrinsic evidence, namely, the sworn statements (interviews), was unnecessary for impeachment. Impeachment had already been achieved out of the mouth of each witness sought to be impeached by a prior inconsistent statement. The tape-recorded telephone conversation between the mother and Johnson's attorney was, likewise, inadmissible for impeachment. The mother had categorically admitted she had lied during the telephone conversation with Johnson's attorney. Therefore, there was no need for extrinsic evidence to impeach the mother. The district court was correct in refusing to admit the sworn statements (interviews) and tape-recorded telephone conversation for the purpose of impeachment.

Regarding the trial court's refusal to allow Officer Domangue to testify concerning his conversation with the victim on the evening of Johnson's arrest, the victim's statement to Officer Domangue was inconsistent with the victim's testimony at trial. The victim testified that Johnson had assaulted him, while, according to offer of proof regarding the excluded testimony of Officer Domangue, the victim negated any sexual assault and, consequently, any sexual penetration. The victim's prior inconsistent statement was admissible, extrinsic evidence bearing upon the witness' credibility. The excluded evidence from Domangue would have been admissible only for the purpose of impeachment. However, the victim's credibility had already been attacked extensively during Johnson's cross-examination of the victim. Rule 103(1) (Neb. Rev. Stat. § 27-103(1) (Reissue 1979)) of the Nebraska Evidence Rules provides: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ." Evidence in the nature of impeachment sought to be introduced through Officer Domangue was clearly cumulative. We conclude that the exclusion of Officer Domangue's testimony was harmless error. See *State v. Smith*, 218 Neb. 201, 352 N.W.2d 620 (1984).

AFFIRMED.